UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BARRY HUMPHRIES,

    Defendant.
                               /

Case No. 06-20339

Honorable John Corbett O'Meara

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S SEPTEMBER 13, 2006 MOTION TO SUPPRESS**

    This matter came before the court on defendant Barry Humphries' September 13, 2006 motion to suppress. The government filed a response October 6, 2006; and an evidentiary hearing was held January 4, 2007. Defendant Humphries filed a supplemental brief February 2, 2007, to which the government responded March 7, 2007. For the reasons that follow, the court will deny Defendant's motion to suppress.

**BACKGROUND FACTS**

    On June 21, 2003, defendant Barry Humphries and Nicky Crain, his passenger, were stopped by United States Customs and Border Patrol ("CBP") agents near the entrance to the Detroit-Windsor Tunnel in Detroit, Michigan. Although Humphries and Crain claim they were only looking for a parking space and had no intention of crossing the international border into Canada, they ended up in an area in which cars routinely line up to pass through the Windsor Tunnel.

    Defendant was driving an eye-catching, customized 1968 Buick Electra. Whether curious about the vehicle's appearance or simply checking it as an outbound vehicle at the border crossing, CBP agents Latosynski and Williams approached the vehicle. At the evidentiary hearing, the agents

testified that defendant Humphries, the driver, appeared nervous when they approached to ask for identification. During the carside encounter, one of the agents saw that Defendant was smoking a cigar that the agent believed may have been altered to contain marijuana rather than tobacco. The agents requested Defendant to drive his car to the Secondary Inspection area, and Defendant complied.

At the Secondary Inspection area, the agents requested Defendant and his passenger to exit the vehicle and requested Defendant to empty his pockets onto the hood of the car. Defendant removed from his pocket a bag of marijuana. The agents then escorted the two into the Secondary Inspection office while a more extensive search of the car took place outside. The search of the car turned up a loaded, .38 caliber Titan Tiger revolver, which had been concealed behind the armrest of the front seat. Additional marijuana was also found inside the car by Agents Davinci and Gagne. Defendant Humphries claimed that both the gun and the marijuana were his.

Bureau of Immigration and Customs Enforcement Duty Agent Brian Helmerson arrived at the port and defendant Humphries again said that the firearm was his. After being booked by Hamtramck police, Defendant was served forfeiture papers and released on his own recognizance. Two days later Detective Voight, the case detective, talked to defendant Humphries by telephone. During the call Defendant told Voight that the firearm was his and that he had bought it on the streets for protection.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") adopted the case for prosecution. Defendant Humphries voluntarily appeared at the Detroit ATF office August 5, 2003, and was interviewed by Special Agents Jackson and Sharpe. At that time Humphries was not under arrest, and he again admitted to possession and ownership of the firearm.

Defendant Humphries was indicted June 22, 2006.  In his motion to suppress, Defendant contends that his Fourth and Fifth Amendment rights were violated because the CBP officers had no basis to search his car at the border crossing.  Defendant claims that "[s]ince no reasonable person could have concluded that defendant intended to enter the Detroit-Windsor tunnel, . . . the border exception to the warrant requirement was not implicated and could not be used as a justification for the search."  Defendant's supp. br. at 2.

## **LAW AND ANALYSIS**

In order to prevent the introduction of contraband into the country and to regulate the collection of applicable duties on certain goods, Congress has granted the Executive Branch plenary authority to conduct routine searches at border crossings without any requirement of reasonable suspicion, probable cause, or warrant.  United States v. Montoya de Hernandez, 473 U.S. 531, 537-38 (1985); 18 U.S.C. §§ 1467 and 1582.  However, non-routine searches such as strip searches and body cavity examinations, which are not alleged in this case, do require a showing of reasonable suspicion.  Spears v. Sanders, 71 F.3d 626, 630 (6th Cir. 1995).

The United States Supreme Court has given examples of what constitutes the functional equivalent of an international border.  "For example, searches at an established station near the border, at a point marking the confluence of two or more roads that extend from the border, might be the functional equivalents of border searches."  Almedia-Sanchez v. United States, 413 U.S. 266, 272-73 (1973).

In United States v. Martinez-Fuerte, 428 U.S. 543, 552-23 n.8 (1976), the Supreme Court recognized that United States Customs agents may conduct warrantless stops of vehicles within 100 miles of an actual boarder to ask for identification.  Indeed, "[t]he term 'border' logically includes

the check point at the point of entry as well as a reasonable extended geographic area in the immediate vicinity of any entry point." United States v. Mejias, 452 F.2d 1190, 1193 n.1 (9th Cir. 1971). Also, the validity of a border search does not depend on whether it is prompted by a criminal investigation motive. United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006).

At the evidentiary hearing in this case, Agent Latosynski testified that he encountered Humphries' vehicle "next to the secondary inspection area just short of the international border." Evidentiary hrg. Jan. 4, 2007, trans. p. 9. He further explained, "There's an opportunity to turn around . . . to go straight and make a U-turn . . . proceed back to Detroit, but once you make that turn and you've approached that area, you've made a commitment to go to Canada." Id.

Although defendant Humphries argues that in error he turned into the border crossing area to look for a parking space, he did end up in a reasonably extended geographic area in the immediate vicinity of a border crossing, only several hundred feet from the entrance to the Detroit-Windsor Tunnel. Therefore, the agents were lawfully carrying out their statutory duties in a border area when they stopped Humphries' car to ask for identification. They were not required to demonstrate probable cause, reasonable suspicion, or a criminal investigation motive.

The court also finds that the CBP agents were authorized to search defendant Humphries' car under the "plain view" doctrine. In Coolidge v. New Hampshire, 403 U.S. 443, 465, (1971), the Supreme Court held that under certain circumstances police may seize evidence in plain view without a warrant. The plain view test was later refined by the Court in Horton v. California, 496 U.S. 128 (1990), in which the Court required the following four factors: 1) officers are legally present, 2) they see item that is readily apparent evidence, 3) the item seized must actually be in plain view, and 4) the officer must also have a lawful right of access to the object itself. Id. at 130-

31. The Court did not require that the officers know that the evidence is contraband.  Instead, the Court has explained, "probable cause is a flexible, common sense standard.  It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983) (citation omitted).

A motorist has "no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passers by or diligent police officers."  Id. at 740.  The United States Court of Appeals for the Sixth Circuit has held that a police officer could peer inside a vehicle if it were possible for a member of the general public to do the same, regardless of whether the defendant was inside or outside the car.  United States v. Weatherspoon, 82 F.3d 697 (6th Cir. 1996).

At the evidentiary hearing in this case, Agent Latosynski testified that defendant Humphries was holding a cigar that appeared to be altered to contain contraband.  To establish a foundation for his interest in the cigar, Latosynski testified that in his experience as a law enforcement officer such an alteration was typical of marijuana possession.  Hrg. trans. p. 13-14.

The agents in this case were legally present at the side of Humphries' car because they were conducting lawful border stops within a border area.  Agent Latosynski observed in plain view what he reasonably believed may have been an altered cigar containing marijuana.  Therefore, the officers had a lawful right of access to and seizure of Defendant's car and were legally allowed to perform a search of the vehicle for additional marijuana, which by the way, they did find.

Defendant Humphries also argues that his statements regarding possession of the gun and marijuana that were made after the search should be suppressed as fruits of the poisonous tree. However, because the court has found that the search was not illegal, his statements will not be suppressed.

## **ORDER**

It is hereby **ORDERED** that defendant Barry Humphries' September 13, 2006 motion to suppress evidence is **DENIED.**

s/John Corbett O'Meara<br>
United States District Judge

Dated: April 9, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 9, 2007, by electronic and/or ordinary mail.

s/William Barkholz<br>
Case Manager